IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHAD STONE,<br><br>                      Plaintiff,<br><br>vs.<br><br>BURT HURWITZ, et al.<br><br>                      Defendants. | CV 23-95-BLG-SPW-TJC<br><br><br>**ORDER** |

Plaintiff Chad Stone, a self-represented litigant, filed a Complaint on August 23, 2023, pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Stone alleged violations of his constitutional rights by defendants Bert Herwitz, State of Montana, and Park County, Montana, seeking an award of damages.  (*Id.*)

On October 5, 2023, the Court granted Stone's motion to proceed in forma pauperis, but concluded that his Complaint failed to satisfy the requirements of 28 U.S.C. § 1915(e)(2).  (Doc. 4 at 1, 4.)  The Court granted Stone the opportunity to file an amended complaint on or before November 6, 2023.  (*Id.* at 17.)

On November 8, 2023, Stone filed the Amended Complaint now before the Court.  (Doc. 5.)  Stone's Amended Complaint names six defendants: (1) Jason Hopkin, in his official capacity as Park County Deputy Sheriff; (2) Kirby Fanus, in his official capacity as an Agent of the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"); (3) Burt Hurwitz, both in his individual capacity and in his official capacity as Acting Park County Attorney; (4) Brenda Gilbert, both in her individual capacity and in her official capacity as a Montana district court judge; (5) Linda Cantin,[1] both in her individual capacity and in her official capacity as a justice of the peace; and (6) Brad Bichler, in his official capacity as Park County Sheriff. (Doc. 5 at 2–4.) The State of Montana and Park County are no longer named as defendants; however, Stone states elsewhere in his Amended Complaint that he continues to seek damages from the State of Montana in addition to, now, the City of Livingston. (*Id.* at 16.)

## I.    SCREENING

When a litigant proceeds in forma pauperis, the Court must dismiss the case if it is determined that the action (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against defendants who are immune. 28 U.S.C. § 1915(e)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is malicious if it is "filed

/ / /

---

[1] Stone names "Linda Canton" when listing the defendants in the Amended Complaint (Doc. 4 at 4) but uses "Cantin" when stating his allegations. "Cantin" appears to be the correct spelling, so the Court will refer to the defendant as such. *See Park County Justice Court*, PARK CTY., MONT., https://perma.cc/M8KA-5ZAZ (last accessed Feb. 14, 2024).

2

with the intention or desire to harm another," *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege "the grounds of his entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration omitted). Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2). To satisfy the requirements in Rule 8, a complaint's allegations must cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See id.* at 690; *Twombly*, 550 U.S. at 556. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with a defendant's liability," or "amount to nothing more than a formulaic recitation of the elements" of a constitutional claim. *Id.* at 678, 681 (internal quotation marks omitted). A

3

complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Id.* at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and alteration omitted).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardu*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Courts must briefly explain deficiencies that may be cured by amendment, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), but "need not provide great detail or . . . act as legal advisors" to the plaintiff, *Noll v. Carlson*, 809 F.2d 1446, 1448–49 (9th Cir. 1987).

4

For the reasons described below, Stone's Amended Complaint again fails to satisfy the requirements of 28 U.S.C. § 1915(e)(2).  As currently pled, the Amended Complaint does not comply with the pleading requirements under Rule 8, and fails to state a claim upon which relief may be granted.  These deficiencies might be cured by a clearer statement of his claims, facts to support those claims, and a clearer statement of each defendant's actions.  Stone will be given an opportunity to file an amended complaint, but he must meet the legal standards described below.

## II.   STONE'S CLAIMS

Stone brings his claims under 42 U.S.C. § 1983, and he seeks $5 million in damages each from Gilbert, Cantin, Hurwitz, and Bichler, and $1 million each from Hopkin and Fanus.  (Doc. 5 at 16.)  Stone further seeks $5 million from the State of Montana and the City of Livingston, who are not named as defendants.  (*Id.*)  In addition, Stone seeks several forms of injunctive relief, requesting that "Judge Gilbert and Judge Cantin [be] removed from their positions and prevented from participating in anything to do with the law for the remainder of their lives"; that "Hopkin and Fanus be disallowed from being in law enforcement for the remainder of their lives due to their misconduct in my case"; that "these restraining orders and my false arrest in Livingston and by the Federal Government [be] expunged from my record"; "the immediate return of al[l] of my firearms from the

ATF including the missing 9 mm and AR-15"; and the removal of Bichler from his office as Park County Sheriff.  (*Id.*)

At various points in his Amended Complaint, Stone alleges violations of 18 U.S.C. §§ 241 and 242.  But these provisions of the criminal code "provide no basis for civil liability."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Therefore, the Court will not discuss them further and will construe those claims in the context of 42 U.S.C. § 1983.  (*See* Doc. 5 at 4.)

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Deveraux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

To assert a claim under Section 1983, a plaintiff must demonstrate that the defendant personally participated in the deprivation of his constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A defendant deprives another of a constitutional right under Section 1983 "if he does an affirmative act,

participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### A.     Claims Against Brad Bichler and Jason Hopkin

Stone brings Section 1983 claims against Bichler and Hopkin in their official capacities as Sheriff and Deputy Sheriff of Park County, respectively.  Stone seeks $5 million in damages from Bichler, and $1 million from Hopkin.

A state official sued in his official capacity for damages is not a person subject to suit under Section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Here, by bringing his claims against Bichler and Hopkin in their official capacities, Stone seeks monetary relief against defendants who are immune.  Therefore, his claims are subject to dismissal.

Stone will be given an opportunity to file a second amended complaint, however, to remedy this issue and properly state his claims against these defendants.

/ / /

/ / /

7

To the extent Stone seeks to hold Bichler liable for his role as Hopkin's supervisor (*see* Doc. 5 at 16), however, Stone is reminded that a defendant may be held liable as a supervisor under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks omitted); *see also Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (absent a positive act on behalf of the supervisor, the plaintiff must show an "affirmative link" between the supervisor's acts and the alleged constitutional violation).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refusing to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (9th Cir. 2011) (alteration in original); *see also Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."). "[W]here the applicable constitutional standard is deliberate indifference, a plaintiff may state a

claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." *Hydrick v. Hunter*, 669 F.3d 937, 941 (9th Cir. 2012) (internal quotation marks omitted).

The Court also notes that Stone seeks an injunction that Hopkin "be disallowed from being in law enforcement for the remainder of" his life, and for "the removal of [Bichler] from the Sheriff['s] department as he has demonstrated that he lack[s] the demeanor to be a law enforcement officer let alone in charge." (Doc. 5 at 16.)  The Court does not have the inherent power to grant Stone this relief.  Further, the Court finds that these claims would change the nature of Stone's suit and do not comply with the Court's previous Order that Stone may not add "new, unrelated claims in his amended complaint."  (Doc. 4 at 15.)  Therefore, these claims are subject to dismissal.

### B.    Claims Against Brenda Gilbert and Linda Cantin

Stone brings Section 1983 claims against Brenda Gilbert, both in her individual capacity and in her official capacity as a district court judge, and against Linda Cantin, both in her individual capacity and official capacity as a justice of the peace.  Stone seeks $5 million in damages from each defendant.

"It is well established that state judges are entitled to absolute immunity for their judicial acts." *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967)).  In addition, "Justices of the Peace,

9

it is well established, fall within the protective ambit of the doctrine." *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974).

As a form of absolute immunity, the judicial immunity enjoyed by state court judges and justices of the peace "forecloses claims based on a judge's actions conducted while in [her] judicial capacity." *Bey v. Gilbert*, 2008 WL 4602719, at *2 (C.D. Cal. Oct. 15, 2008) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). Judicial immunity cannot be overcome even by allegations of bad faith or malice. *Mireles*, 502 U.S. at 11.  The only circumstances where a judge does not enjoy absolute immunity are (1) when she acts outside her judicial capacity and (2) when she acts in complete absence of jurisdiction.  *Id.* at 11–12.

Here, the allegations in the Amended Complaint against Gilbert are all based on actions conducted in her judicial capacity.  This is true as well for the allegations against Cantin, save one, discussed below.

Stone alleges that Gilbert "goes out of her way to complicate matters and be completely unreasonable in her approach" (Doc. 5 at 8); "denied a restraining order" and "wouldn't even allow a hearing for one" (*id.*); "refused to enforce [a] no contact order" (*id.*); "ignore[d] her own orders" (*id.* at 9); "denie[d] me my constitutional right to a firearm for three years" (*id.*); "without proper service, without a hearing, without notification extended the order of protection forever" (*id.*); "issued a search warrant for my home" that "violated my 4th amendment

10

rights" (*id.* at 12); "refused to look at the video evidence, photographic evidence, text message evidence," and courtroom testimony during a hearing for an order of protection (*id.*); "screamed at me in court denying that she had signed the order dismissing the order of protection . . . in spite of the fact that I had it in my hand" (*id.*); and "bought [a false accusation of assault and sexual assault] hook line and sinker" while "refus[ing] to look at impartial evidence" (*id.* at 13). As alleged, each instance of this conduct was within Gilbert's judicial capacity and within her jurisdiction as a district court judge. Therefore, Gilbert is entitled to judicial immunity.

Stone alleges that Cantin issued a 10-year restraining order against Stone. (*Id.* at 9.) This conduct, too, was within Cantin's judicial capacity and within her jurisdiction as a justice of the peace. Therefore, she is entitled to judicial immunity as to this aspect of Stone's action against her.

Stone also alleges, however, that Cantin participated in a "conspiracy to deny constitutional rights" along with Stone's neighbors, their attorney, and Stone's ex-wife. (*Id.*) Such conduct would presumably be outside Cantin's judicial capacity, but Stone does not plead any facts to support this one-off conclusory allegation. To state a claim upon which relief can be granted, "a bare assertion of conspiracy will not suffice. . . . [A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show

11

illegality." *Twombly*, 550 U.S. at 556–57 (discussing conspiracy in the context of the Sherman Antitrust Act).  Therefore, even if Cantin's participation in a conspiracy to deny Stone's constitutional rights would not be entitled to judicial immunity, Stone has not included any factual allegations to support his claim.

Accordingly, because Stone's claims against Gilbert and Cantin either seek monetary relief against defendants who are immune or fail to state a claim upon which relief may be granted, they are subject to dismissal.

The Court notes that Stone also requests injunctive relief in the form of "Judge Gilbert and Judge Cantin removed from their positions and prevented from participating in anything to do with the law for the remainder of their lives."  (Doc. 5 at 16.)  Again, the Court has no authority to grant such relief.  Moreover, Section 1983 specifically provides: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

Thus, even if this Court had the authority to order the removal of a state district court judge or justice of the peace, Stone has not suggested that either of these defendants violated a declaratory decree or that declaratory relief was unavailable.  Accordingly, injunctive relief is precluded under Section 1983.

/ / /

Stone will be given an opportunity to file a second amended complaint to properly allege facts regarding Cantin's participation in a conspiracy outside her judicial capacity to deprive Stone of his constitutional rights. But any claim based on Gilbert or Cantin's actions conducted in their judicial capacity will be subject to dismissal.

### C.    Claims Against Kirby Fanus

Stone brings a Section 1983 claim against Kirby Fanus in his official capacity as an ATF Agent. Stone seeks $1 million in damages and several forms of injunctive relief.

#### 1.    Damages

Under Section 1983, a plaintiff may bring a claim against a person who deprived him of his rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any *State* or *Territory* or the *District of Columbia*." 42 U.S.C. § 1983 (emphasis added). "Section 1983's plain terms do not provide a cause of action against federal officers acting in their official capacity." *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1316 (S.D. Cal. 2018). Congress has never created "an analogous statute for federal officials." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).

/ / /

/ / /

Certain types of claims against federal officers may be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Stone specifically indicated in his Amended Complaint, however, that he is not bringing a *Bivens* claim. (Doc. 5 at 4.) Even if Stone had pleaded a *Bivens* claim against Fanus, however, such an action may be brought against a government official only in his individual capacity, not in his official capacity, because this official-capacity suit "would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (2019) (quoting *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007)) (internal quotation marks omitted).

Therefore, Stone fails to state a claim upon which relief may be granted. Stone's claim against Fanus is subject to dismissal. Stone will be given an opportunity to file a second amended complaint, however, to remedy this issue and properly state a claim against Fanus.

Stone is advised that the United States Supreme Court has recognized three implied causes of action in its *Bivens* line of cases. *See Egbert v. Boule*, 596 U.S. 482, 490–91 (2022). First, in *Bivens*, the Court created a cause of action against federal agents for violations of a suspect's Fourth Amendment rights during an unlawful search and arrest. 403 U.S. at 397. Second, the Court recognizes a

14

former congressional staffer's implied cause of action under the Fifth Amendment to bring a sex discrimination claim. *Davis v. Passman*, 442 U.S. 228, 248–49 (1979). Finally, a federal prisoner has an implied cause of action for inadequate medical care under the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14, 20 (1980).

A plaintiff seeking to bring a so-called *Bivens* action must either show that his claims fit within the context of one of these three cases—*Bivens*, *Davis*, or *Carlson*—or else must persuade the court that *Bivens* should be applied in a new context. *Egbert*, 596 U.S. at 491–92; *Marquez v. Rodriguez*, 81 F.4th 1027, 1030 (9th Cir. 2023). Barring special factors, however, this Court will not apply the *Bivens* doctrine beyond the contexts where it has already been applied. *See Ziglar*, 582 U.S. at 135–40.

### 2.    Lifetime Ban from Law Enforcement

Stone seeks an injunction that Fanus "be disallowed from being in law enforcement for the remainder of" his life. (Doc. 5 at 16.) As is the case with Hopkin, the Court does not have the inherent power to grant Stone this relief. Further, the Court finds that this claim would change the nature of Stone's suit and does not comply with the Court's directive in its previous Order that Stone may not add "new, unrelated claims in his amended complaint." (Doc. 4 at 15.) Therefore, Stone's claim for injunctive relief against Fanus is subject to dismissal.

### 3.    Return of Seized Property

Stone also seeks injunctive relief in the form of "the immediate return of al[l] of my firearms from the ATF including the missing 9 mm and AR-15."  (Doc. 5 at 16.)

Sovereign immunity bars claims against federal officials in their official capacities unless Congress has expressly waived immunity by statute.  *Murphy Co. v. Biden*, 65 F.4th 1122, 1128 (9th Cir. 2023).  Section 702 of the Administrative Procedures Act contains such a waiver, and provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  The Ninth Circuit has held that Section 702 provides "an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable."  *Presbyterian Church v. United States*, 870 F.2d 518, 525 (9th Cir. 1989).  The court has also found that this waiver of sovereign immunity is not limited to claims

/ / /

/ / /

/ / /

challenging final agency action under the Administrative Procedures Act.  *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017).[2]

In contrast to claims seeking monetary damages, which are brought under *Bivens*, courts in the Ninth Circuit have found that claims seeking injunctive relief against a federal agency or officer in his official capacity may be brought under 28 U.S.C. § 1331.  *Beller v. Middendorf*, 632 F.2d 788, 797 (9th Cir. 1980), *overruled on other grounds by Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008); *Pinson v. Othon*, 2020 WL 6273410, at *4 (D. Ariz. Oct. 26, 2020) (citing *Presbyterian Church*, 870 F.2d at 525 n.9 (stating that Section 702 "waives sovereign immunity . . . for constitutional claims brought under the general federal-question jurisdiction statute, 28 U.S.C. § 1331")).  In such actions, however, the plaintiff must "name as a defendant the person who would be responsible for carrying out any order for injunctive relief."  *Pinson*, 2020 WL 6273410 at *5.

Here, Stone seeks injunctive relief from the ATF as a federal agency, and names an ATF agent in that person's official capacity.  It is not clear based on Stone's allegations, however, if Fanus is the official who Stone alleges would be responsible for carrying out an order from this Court for injunctive relief.  If Fanus is the correct official, Stone must restate his request for injunctive relief in a

---

[2] *But see Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 144 S. Ct. 2440, 2449–50 (2024) (indicating that judicial review is available under § 702 for "final agency action").

second amended complaint, name Fanus as a defendant in his official capacity, and allege that Fanus is the appropriate defendant responsible for implementing an order to return Stone's seized property.[3]  On the other hand, if Fanus is not the appropriate ATF official who would carry out an order to return Stone's seized property, Stone must name that person as a defendant in their official capacity in a second amended complaint.

### D.   Claims Against Burt Hurwitz

Stone brings a Section 1983 claim against Burt Hurwitz, both in his individual capacity and in his official capacity as Acting Park County Attorney. Stone seeks $5 million in damages.

Stone summarizes his claims against Hurwitz as (1) the "denial of my constitutional rights under to [sic] color of the law," (2) "his denial of my rights to equal application of the law," (3) "his intervention in the kidnapping charges" against Stone's wife, and (4) his "participation in the Federal malicious prosecution."  (Doc. 5 at 16.)

/ / /

/ / /

/ / /

---

[3] In this circumstance, if Stone is also bringing a *Bivens* claim against Fanus, Stone must assert claims against Fanus in both his individual capacity and official capacity.

### 1.    Violation of First, Second, and Fourth Amendments

As to Stone's allegation that Hurwitz denied Stone's constitutional rights, this appears to refer to Stone's earlier reference to "[m]y First, Second, Fourth[ ] Amendment rights." (*Id.* at 15.)  Further, based on the Amended Complaint, it appears that his Second and Fourth Amendment claims relate specifically to Stone's allegations that Hurwitz "over[saw] the search and seizure of my firearms from my home . . . knowing full well there was no active restraining orders in place" and thus "oversaw the violation of my rights under the color of the law." (*Id.* at 14.)

Absent certain recognized exceptions, searches and seizures violate the Fourth Amendment unless they are based on probable cause and executed pursuant to a valid search warrant. *United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006).  "Probable cause to search exists when the known facts and circumstances are sufficient to warrant a reasonable person to conclude that contraband or evidence of a crime will be found." *United States v. Ibarra*, 345 F.3d 711, 716 (9th Cir. 2003) (citing *Ornelas v. United States*, 517 U.S. 690, 696– 97, 699 (1996)).  "A search warrant can be invalid because it is not supported by probable cause or does not particularly describe[] the place to be searched or the things to be seized." *Kortlander v. Cornell*, 816 F. Supp. 2d 982, 996 (D. Mont. 2011) (citing *Millender v. Cty. of L.A.*, 620 F.3d 1016, 1024 (9th Cir. 2010)).

19

Here, Stone appears to allege that the search of his home and seizure of his firearms were conducted pursuant to a warrant that was not supported by probable cause, but the factual allegations are insufficiently pleaded in the Amended Complaint to state such a claim.

Stone's allegations are laid out as follows.  He alleges that "there was no active restraining orders in place"; that his wife, Melissa, had perjured herself "to obtain the search warrant"; and that Hurwitz was aware of these facts when he oversaw the execution of the warrant on Stone's property.  (Doc. 5 at 14.)  Stone alleges that Melissa lied to obtain an order of protection, and that this order of protection was granted by Judge Gilbert in August 2021 but was then "voluntarily receded" in October 2021.  (*Id.* at 12.)  Elsewhere, Stone states that Justice of the Peace Cantin had issued a "10 year restraining order" at the request of his ex-wife, Lindsey, around 2017.  (*Id.* at 9.)  Stone later discusses an order of protection that "Judge Gilbert had extended for Lindsey" sometime in 2021; it is unclear whether this is the same order of protection issued in 2017.  (*See id.* at 12.)  Stone alleges that sometime "in approximately 2019," he had a meeting with Hurwitz where Hurwitz "admitted to me that the order of protection issued by Cantin was unconstitutional.  He told me that the order of protection with Lindsey was over." (*Id.* at 14.)  It is unclear whether Stone refers to two different orders of protection, or a single order of protection that was both "unconstitutional" and "over."  The

Court is also unable to decipher where the search and seizure of Stone's property fits into this timeline.

In granting Stone leave to amend his original Complaint, the Court ordered that any amended complaint allege its claims in "short, plain statements." (Doc. 4 at 15.) The lack of structure and a clear timeline of events in Stone's Amended Complaint, and the inclusion of numerous irrelevant facts, obfuscate the relevance of his allegations and the nexus to his current claims. *See In re PETsMART, Inc. Secs. Litig.*, 61 F. Supp. 2d 982, 991 (D. Ariz. 1999) ("The court should not have to play connect-the-dots in order to identify the facts and trends upon which plaintiffs base their claim.").

Stone also alleges that Hurwitz violated his rights under the Second Amendment. But the "mere occurrence of a firearm seizure . . . is not enough to establish a Second Amendment violation." *Partin v. Gevatoski*, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020). Without alleging sufficient facts to establish the plausibility of his claim that the search of his home and seizure of his firearms were unreasonable, there is otherwise no basis for the Court to find a plausible claim that his Second Amendment rights were violated.

Finally, Stone alleges Hurwitz violated his First Amendment rights. This claim appears to refer to Stone's allegations that he "went to talk to the county attorney about the vast injustice, criminal activity and unconstitutional behaviors

21

directed at me . . . and stated my grievances," and as a result, he "was prosecuted, aligned, arrested, and defamed for using my words to try to [e]ffectively address the ongoing injustices I faced with the elected official who has the ability do to something about it . . . ."  (Doc. 5 at 11.)

To prevail on a claim for retaliatory arrest—i.e., when the plaintiff alleges he was arrested in retaliation for exercising their First Amendment rights—the plaintiff generally must demonstrate that the arrest was made without probable cause.  *Nieves v. Bartlett*, 587 U.S. 391, 405–06 (2019); *see also Lemly v. Mangat*, 2021 WL 4430379, at *3 (C.D. Cal. Aug. 27, 2021).

Here, Stone lacks sufficient facts to satisfy the plausibility standard in stating a First Amendment claim.  Stone states the series of events as follows:

> The "meeting" had descended into a place where I was being gaslit by the county attorney.  The City of Livingston police department was called.  After speaking with them I left without detention, or being cited.  Approximately 6-8 weeks later I was arrested at an exchange with my child because I had failed to show up in court for the charges against me from that incident.  They included Assault, Disturbing the Peace, Child Endangerment, and one other charge I can't remember.

(Doc. 5 at 10.)  If the Court correctly interprets these facts in Stone's Amended Complaint as alleging that Hurwitz violated Stone's First Amendment rights, Stone fails to articulate what role Hurwitz had in these events, whether he was the official who made the charging decision, and if he was, whether he lacked probable cause to do so.  Stone does not contest, for example, that his conduct constituted a

disturbance of the peace. *See* Mont. Code Ann. § 7-32-4302 (granting cities the power to prevent and punish "conduct calculated to disturb the public peace"); *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942) (stating that words "whose speaking constitutes a breach of the peace by the speaker" are not protected by "the Constitutional right of free expression").

Accordingly, the Court concludes that Stone has failed to state a claim regarding his allegations that Hurwitz violated his First, Second, or Fourth Amendment rights. Therefore, these claims are subject to dismissal.

Stone will be given an opportunity to file a second amended complaint, however, to remedy this issue and properly state these claims.

### 2.   Denial of Equal Protection

Stone alleges that Hurwitz denied his "rights to equal application of the law." (Doc. 5 at 16.) The Court construes this as a claim under the Equal Protection Clause of the Fourteenth Amendment, which mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

Equal protection claims typically rest on allegations that the state has arbitrarily classified the plaintiffs as members of an identifiable group. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Thus, ordinarily, the first step in an

/ / /

23

equal protection analysis is to identify the state's classification of such groups. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017).

In some circumstances, however, a plaintiff may sustain an equal protection claim "even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122 (9th Cir. 2022) (quoting *Engquist*, 553 U.S. at 601).  To plead a class-of-one equal protection claim, the plaintiff must allege facts showing that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Nevertheless, absent proof of discrimination based on suspect characteristics such as race, religion, gender, or personal beliefs, courts have no jurisdiction to review a prosecutor's charging decisions on equal protection grounds.  *United States v. Oakes*, 11 F.3d 897, 899 (9th Cir. 1993).  *See also United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007) (holding "no viable selective prosecution claim" when "Defendant has not introduced any evidence even remotely showing that his prosecution was based on a discriminatory purpose").

/ / /

/ / /

24

Here, Stone has not sufficiently alleged a violation of the Fourteenth Amendment's Equal Protection Clause.  Stone's claim that Hurwitz denied his right to "equal application of the law" (Doc. 5 at 16) apparently stems from Stone's perception of Hurwitz's "attempt[s] to try to get me because I have spoken truth to power," when Hurwitz "failed to prosecute [Stone's] neighbors for the unmitigated false reporting to police" (*id.* at 14).  To the extent this "unequal application and protection of the law" (*id.*) is based on charging decisions, this Court has no authority to review such decisions absent a showing that Hurwitz's treatment of Stone was motivated by a suspect classification.  Stone has made no such showing.  To the extent Stone's allegation is based on other conduct committed by Hurwitz, Stone has failed to allege that (1) he was *intentionally* treated differently from others, (2) he and those others were *similarly situated*, and (3) there is *no rational basis* for the difference in treatment.

Therefore, Stone has failed to state a claim upon which relief may be granted, and his equal protection claim against Hurwitz must be dismissed.  Stone will be given an opportunity to remedy this issue and properly state his equal protection claim.

### 3.  Intervention in Kidnapping Investigation

Stone alleges that his wife, Melissa, kidnapped his child and that Stone was informed by Sheriff Bichler that "the reason Melissa was not charged with

25

kidnapping was because of the personal intervention of Burt Hurwitz." (Doc. 5 at 12.) Stone lists this among the grounds for his $5 million damages claim against Hurwitz. (*Id.* at 16.)

"[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 599 U.S. 670, 674 (2023) (quoting *Linda R. S. v. Richard D.*, 410 U. S. 614, 619 (1973)). In other words, where a plaintiff alleges an injury based on the alleged failure to enforce criminal laws against third parties, he lacks standing under Article III of the United States Constitution. *Id.*; *see also Lefebure v. D'Aquilla*, 15 F.4th 650, 655 (5th Cir. 2021) ("[C]ourts across the country have dutifully enforced this rule in case after case—refusing to hear claims challenging the decision not to investigate or prosecute another person.").

Here, Stone lacks standing to sue Hurwitz for whatever alleged discussions preceded the prosecuting authority's decision not to charge Stone's wife. Therefore, his claim must be dismissed.

### 4.    Malicious Prosecution

Stone alleges that Hurwitz "participat[ed] in the Federal malicious prosecution" against him. (Doc. 5 at 16.) Stone alleges that Hurwitz "pushed to have this case sent to the ATF," thus "violating my constitutional rights," and that Hurwitz then "deliberately kept [information] from the investigators." (*Id.* at 14.)

The Supreme Court has recognized that a claim for malicious prosecution is actionable under the Fourth Amendment, at least to the extent the plaintiff was seized without probable cause. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). The tort of malicious prosecution generally allows "recovery against an individual who ha[s] initiated or caused the initiation of criminal proceedings despite having 'no good reason to believe' that charges were 'justified by the facts and the law.'" *Id.* at 43 (quoting Thomas M. Cooley, *The Law of Torts* 180 (1880)). The elements of a Section 1983 malicious prosecution claim are: (1) the suit was initiated without any probable cause; (2) the initiation of the suit was motivated by malice; and (3) the prosecution terminated favorably for the accused. *Id.* at 44.[4] Malice is present when "the motive in instituting the suit was . . . without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 596 U.S. at 44 (internal quotation marks omitted).

In the malicious prosecution context, courts will find probable cause existed when it was objectively reasonable for the defendant to suspect the plaintiff had

---

[4] *But see Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) ("Federal courts rely on state common law for elements of malicious prosecution."); *Blacktail Mt. Ranch, Co., LLC v. State*, 220 P.3d 388, 390 (Mont. 2009) (setting forth six elements of malicious prosecution: (1) judicial proceeding commenced and prosecuted against plaintiff; (2) defendant responsible for instigating, prosecuting, or continuing proceeding; (3) lack of probable cause; (4) defendant actuated by malice; (5) proceeding terminated favorably for plaintiff; and (6) plaintiff suffered damage).

committed a crime. *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006); *see also Blacktail Mt. Ranch*, 220 P.3d at 390 (defining probable cause as "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious person to believe that the accused is guilty of the offense charged") (citation omitted).

Probable cause is "an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009). In a federal criminal prosecution, a grand jury finds probable cause, and a grand jury indictment creates a presumption that probable cause existed for the underlying prosecution. *Conrad*, 447 F.3d at 768. The plaintiff can rebut this presumption "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

Malicious prosecution claims may be brought against a defendant other than the prosecutor, and "the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials." *Id.* The plaintiff must allege, however, that such an official "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

28

Here, Stone lacks sufficient facts to allege that Hurwitz's conduct constituted malicious prosecution.  The Court takes judicial notice of the grand jury indictment in the federal prosecution Stone references throughout his Amended Complaint: *United States v. Stone*, No. CR-22-93-BLG-SPW (D. Mont. Aug. 18, 2022).[5]  Given the grand jury's finding of probable cause in that case, Stone must allege that his criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith, to overcome the presumption that probable cause existed in the underlying prosecution.  Although Stone states, "It is my firmly held belief that information was deliberately kept from the investigators minimally by Hurwitz" (Doc. 5 at 14), Stone does not allege any basis for this belief.  Stone does not state what information Hurwitz possessed, what information was withheld from prosecutors, or whether this information would have been exculpatory.

The Court has strained to find sufficient facts in the lengthy Amended Complaint to state a claim as to Stone's malicious prosecution allegations.  The Court concludes that Stone has failed to state a claim upon which relief may be granted and that this claim must be dismissed.

---

[5] *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (citing Fed. R. Evid. 201 and stating that a court may take judicial notice of matters of public record); *Bliss v. Adewusi*, 2023 WL 6961979, at *6 (D. Or. Oct. 20, 2003) (stating that an indictment is a matter of public record of which the court man take judicial notice).

Stone will be given an opportunity to file a second amended complaint, however, to remedy this issue and properly state his malicious prosecution claim against Hurwitz.

### E.    Claims Against Non-Defendants

Toward the conclusion of Stone's Amended Complaint, Stone states that he seeks $1 million from the City of Livingston "for the malicious prosecution."  In addition, Stone seeks an injunction that the "restraining orders and my false arrest in Livingston . . . [be] expunged from my record."  (Doc. 5 at 16.)[6]

Stone also states that he seeks $5 million from the State of Montana "for suborning this denial of my rights under the color of law, overseeing these malicious prosecutions and failing to hold these bad actors responsible."  (*Id.*)

The Court will not address claims against entities that were not named as defendants in the Amended Complaint.  Stone may include the City of Livingston in a second amended complaint so long as he can properly plead his claims against

---

[6] Stone similarly seeks an injunction that "my false arrest . . . by the Federal Government [be] expunged from my record."  (*Id.*)  The Ninth Circuit has recognized an equitable power to expunge a federal criminal record.  *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991).  The court has stated, however, that this is "a narrow power, appropriately used only in extreme circumstances."  *Id.*  Such circumstances may be present when there has been an unlawful or invalid arrest, government misconduct, or some other factor that outweighs the government's interest in maintaining criminal records.  *Id.*  Stone has not sufficiently alleged such circumstances in his Amended Complaint, but may include this request for relief in a second amended complaint.

it as municipal entity.  The Court concluded in its prior Order, however, that the State of Montana is immune from Stone's claims under the Eleventh Amendment. (Doc. 4 at 13–14.)

## III.  CONCLUSION

28 U.S.C. §§ 1915 and 1915A require the dismissal of a complaint that fails to state a claim upon which relief may be granted but do not deprive the district court of its discretion to grant or deny leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The Court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nevertheless, leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Noll*, 809 F.2d at 1448 (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

Stone's Amended Complaint fails to state a claim upon which relief may be granted and is subject to dismissal.  But it may be possible to cure some of the defects with Stone's claims.  Accordingly, Stone will be given an opportunity to file a second amended complaint to clarify his factual allegations and the specific defendants involved, to provide more specific allegations regarding his claims, and to provide specific factual allegations against each named defendant.

## A.    Amended Complaint

Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of a previous complaint by reference.  Once Stone files an amended complaint, it replaces the prior complaint, which no longer serves a function in the case.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  If Stone fails to use the court-approved form, the Court may strike the amended complaint and recommend the dismissal of this action.  Stone may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Any amended complaint must consist of short, plain statements telling the Court: (1) the rights Stone believes were violated; (2) the names of the defendants who violated the rights; (3) exactly what each defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Stone's rights; (5) when the alleged actions took place; and (6) what injury Stone suffered because of that defendant's conduct.  *Rizzo*, 423 U.S. at 371–72, 377.  Stone must include this information for each claim, whether the claim is brought under Section 1983 or *Bivens*.  *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*.").

32

Stone must repeat this process for each defendant.  Conclusory statements are not enough, nor are declarations that all defendants violated some law or statute.  Instead, Stone must provide specific factual allegations for each element of each of his claims and must state with specificity to which defendants each of his claims apply.  If Stone fails to affirmatively link the conduct of a defendant with an injury suffered, the claim against that defendant will be dismissed for failure to state a claim.

If Stone elects to file a second amended complaint, Stone shall organize his complaint with headings identifying (1) the name of the defendant, and (2) the claim he is alleging.  Under each heading, Stone must include the specific factual allegations relating to that claim.  Stone must use dates or approximate dates and shall not include unnecessary and unrelated details when alleging a specific claim.

## B.    Possible Dismissal

If Stone fails to timely comply with every provision of this Order, this action may be dismissed.  *Ferdik*, 963 F.2d at 1260–61 (court may dismiss an action for failure to comply with any order of the court).

The Court notes that Stone filed his Amended Complaint two days past the deadline stated in the Court's previous Order.  A failure to adhere to the deadline to file a second amended complaint will result in its summary dismissal.

/ / /

33

### C.     Address Change

At all times during the pendency of this action, Stone must immediately advise the Court of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1.     On or before October 18, 2024, Plaintiff may file a second amended complaint.

2.     With Plaintiff's service copy of this Order, the clerk shall include a form amended complaint.

3.     Plaintiff must immediately advise the Court of any change in his mailing address by filing a Notice of Change of Address.  Failure to do so may result in dismissal of this action without notice.

IT IS ORDERED.

DATED this 18th day of September, 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge